UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America ex rel., | ) | |
| Audra Soulias, | ) | No. 10 C 7233 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| Northwestern University and | ) | |
| Northwestern Memorial Hospital, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff-Relator Audra Soulias brings this *qui tam* action on behalf of the United States against Northwestern Memorial Hospital ("NMH"). Soulias alleges that NMH violated the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, by double billing the federal government for services provided to patients in research trials. Soulias also asserts a state law retaliatory discharge claim against Northwestern University (the "University"). Before the Court is Defendants' motion to dismiss Soulias's First Amended Complaint. R. 29. For the reasons set forth below, the Court grants Defendants' motion to dismiss. However, the Court will allow Soulias one final opportunity to adequately plead her claims.

**Background**

Soulias filed her original complaint under seal on November 9, 2010. Her original complaint contained sixteen paragraphs and alleged a single FCA claim against both NMH and the University, on the theory that NMH bills Medicare and

1

that the University allegedly owned NMH. In wholly conclusory terms, Soulias alleged that NMH improperly billed Medicare and federal grants for the same care for the same patients. She alleged that NMH billed research visits to Medicare, received reimbursement, and then billed the federal grant sponsoring the research trial for those same services at the end of the year. Although her complaint was not entirely clear, Soulias's FCA claim appeared to be based on 31 U.S.C. § 3729(a)(1), which imposes civil liability on any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval."

After the government investigated and declined to intervene, the original complaint was unsealed in July 2012. At an October 31, 2012 status hearing, NMH's counsel represented that the University does not own or operate NMH, as Soulias had alleged. Soulias's counsel therefore agreed to amend the complaint to drop the University as a defendant. The Court set a November 14, 2012 deadline for Soulias to file her amended complaint. Soulias failed to do so. Thus, on December 12, 2012, the Court set a briefing schedule for a motion to dismiss.

On December 14, 2012, Defendants filed their motion to dismiss. In their motion, Defendants asked the Court to take judicial notice that NMH is not owned or operated by the University. Defendants also argued that Soulias failed to plead her FCA claim with particularity and did not identify any specific false claims. Defendants argued that pleading with particularity is especially important here because it is legal for NMH to bill Medicare for certain services associated with research trials beyond the cost of the trial itself, particularly (i) routine,

conventional care performed with a research trial and (ii) services to treat medical complications resulting from a research trial. *E.g.,* Medicare National Coverage Determination Manual § 310.1; Medicare Claims Processing Manual, Ch. 32, § 69.1. As a result, a mere allegation that NMH submits some bills to Medicare for patients enrolled in research trials is not necessarily indicative of double billing.

Soulias's response was due January 14, 2013. Again, Soulias failed to respond in any way. Nonetheless, on February 6, 2013, the Court allowed Soulias leave to file an amended complaint on or before February 13, 2013. The Court cautioned Soulias that she was on notice that "what you may be alleging may be something that is entirely proper" and reminded counsel of his obligation to appropriately investigate the claims before filing a complaint. 2/6/13 Tr. at 10.

Soulias filed her First Amended Complaint on February 14, 2013 (one day after the deadline). In her complaint, Soulias dropped her FCA claim against the University, but kept the University in the case by adding a new state law retaliatory discharge claim. Soulias also added a few additional paragraphs to support her FCA claim. Soulias still does not identify any specific false claims submitted by NMH. Instead, she alleges that there have been "many, many instances" of double billing, and then provides a hypothetical example:

> a)      [The University] applies for a grant to do, for instance, kidney research. A grant is awarded of $2,000,000.
>
> b)      The medical services for the grant are conducted by NMH.

> c) A patient with a kidney problem, who is one of the patients in the study being funded by the Federal Government, goes to NMH to receive treatment.
>
> d) Under the agreement with the Federal Government, the treatment for the patient should be billed to the research grant. However, due to the billing practices of Defendant NMH, in many instances, the patients' [sic] own private insurance, or Medicare, is billed for treatment that is also paid for by the grant.

First Am. Compl. ¶¶ 10, 15. Soulias also alleges that she complained to NMH about double billing in May 2009 and March 2010 and that certain NMH personnel acknowledged the problem and were upset that it had not been resolved.

Defendants again move to dismiss.

**Analysis**

It is well-established that the FCA "is an anti-fraud statute and claims under it are subject to the heightened pleading requirements of Rule 9(b)." *United States ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 740 (7th Cir. 2007), *overruled on other grounds*, *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907 (7th Cir. 2009) (quoting *United States ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005)). Rule 9(b) requires a "plaintiff to do more than the usual investigation before filing [a] complaint. Greater precomplaint investigation is warranted in fraud cases because public charges of fraud can do great harm to the reputation of a business firm or other enterprise (or individual)." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) (citations omitted). A complaint generally "must provide the who, what, when, where and how" of the alleged fraud. *Fowler*, 496 F.3d at 740 (quotations and citations omitted).

4

In response to Defendants' motion to dismiss, Soulias does not contend that she has adequately pled the "who, what, when, where, and how" of the alleged fraud. Rather, she argues that "[a] plaintiff's real burden, in any case, is, under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) to provide the level of detail sufficient to make the claim (here a claim of fraud) *plausible*." R. 34 at 3 (emphasis in original). Soulias then argues that her allegations "amount to a *plausible* claim that, because of certain billing code abuses, Defendants knowingly received double payment from the Federal Government, which, of course, amounts to fraud." *Id.* at 6 (emphasis in original).

This argument is deeply and fundamentally flawed. *Iqbal* and *Twombly* address the standard for *notice pleading* under Rule 8(a). *Iqbal*, 556 U.S. at 677-79; *Twombly*, 550 U.S. at 555-56. They have nothing to do with Rule 9(b)'s heightened pleading standard for fraud claims; Rule 9(b) imposes additional requirements above and beyond Rule 8(a), *Iqbal*, and *Twombly*. *See, e.g., Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010); *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 395 (7th Cir. 2009); *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Serv., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008). By arguing only that she states a "plausible" fraud claim, Soulias tacitly (if not explicitly) concedes that she fails to plead her fraud claim with particularity as Rule 9(b) requires.

To satisfy Rule 9(b) for an FCA claim, a relator must plead at least some actual examples of false claims. In *Fowler*, 496 F.3d at 741-42, the relators alleged that Caremark engaged in a scheme to bill for prescriptions even if the prescriptions

were later returned. The Seventh Circuit affirmed dismissal of those claims because the relators did not present any allegations "*at an individual transaction level* to demonstrate that Caremark failed to provide an appropriate refund or replacement product for a returned prescription." *Id.* (emphasis in original). Similarly, in *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 375-77 (7th Cir. 2003), the Seventh Circuit affirmed dismissal of a complaint where the relator repeatedly failed to heed the district court's instructions to identify specific false claims. And in *Gross*, 415 F.3d at 604-05, the Seventh Circuit likewise affirmed dismissal of claims based only on generalized and "conclusory" allegations of a scheme to defraud. *See also United States ex rel. Upton v. Family Health Network, Inc.*, 900 F. Supp. 2d 821, 828 (N.D. Ill. 2012) ("To survive a motion to dismiss, Relators must identify specific false claims for payment or specific false statements made in order to obtain payment.") (quotations and citation omitted); *United States ex rel. Bragg v. SCR Med. Transp., Inc.*, 2011 U.S. Dist. LEXIS 38786, at \*7-12 (N.D. Ill. Apr. 8, 2011) (a relator "is required to plead specific and concrete examples of . . . false claims"); *United States ex rel. Wildhirt v. AARS Forever, Inc.*, 2011 U.S. Dist. LEXIS 37122, at \*6-11 (N.D. Ill. Apr. 6, 2011) (a relator "must plead with particularity the details of *actual claims* submitted to the government") (quotations and citation omitted) (emphasis in original); *Mason v. Medline Indus., Inc.*, 731 F. Supp. 2d 730, 735 (N.D. Ill. 2010) ("A plaintiff who pleads a fraudulent scheme involving numerous transactions over a period of years need not plead specifics with respect to every instance of fraud, but he must at least provide representative examples."); *United*

*States ex rel Walner v. Northshore Univ. Health Sys.*, 660 F. Supp. 2d 891, 896 (N.D. Ill. 2009) ("Typically, FCA claims fail because the plaintiff[s] can only point to a fraudulent scheme and are unable to present evidence at an individualized transaction level.").

Soulias has not identified any actual false claims submitted by NMH, let alone that NMH submitted the false claims knowingly. Instead, she alleges in conclusory fashion that there have been "many, many instances" of double billing. She then provides a vague hypothetical where the University applies for a grant "to do, for instance, kidney research" and NMH bills services to both the grant and either Medicare or the patient's private insurance. This is a far cry from identifying actual instances where a service was billed to a grant after NMH had already been paid for that same service by Medicare or private insurance.

Soulias alleges that "she was personally aware of instances in which the hospital received double payment for the same medical treatment." First Am. Compl. ¶ 17. If that is the case, it should not be difficult to identify actual instances of double billing. That does not mean that Soulias is required to remember and identify specific patient names; that would undoubtedly raise other privacy issues under the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320d *et seq*. But Soulias is still required to provide some actual examples of the double billing she alleges, with enough specificity to satisfy Rule 9(b).

Although Soulias was on ample notice of the pleading requirements before she filed her First Amended Complaint (Defendants raised all of these issues in

their motion to dismiss the original complaint), the Court, in its discretion under Fed. R. Civ. P. 15(a)(2), will allow Soulias one final opportunity to comply with Rule 9(b). This should go without saying, but before filing another complaint, Soulias and her counsel should review the case law in the Seventh Circuit discussed herein which requires a relator to identify alleged fraud "at an individual transaction level." *Fowler*, 496 F.3d at 741-42; *Walner*, 660 F. Supp. 2d at 896.

If Soulias cannot adequately allege an FCA claim, the Court does not intend to exercise supplemental jurisdiction over her new state law retaliatory discharge claim against the University. *E.g., Cortezano v. Salin Bank & Trust Co.*, 680 F.3d 936, 941 (7th Cir. 2012) ("Generally, when a court has dismissed all the federal claims in a lawsuit before trial, it should relinquish jurisdiction over supplemental state law claims rather than resolve them on the merits.").

But if Soulias shores up her FCA claim, her retaliatory discharge claim needs to be amended as well. Soulias has not pled facts to suggest that she has a plausible claim, as Rule 8(a), *Iqbal*, and *Twombly* require. If Soulias believes that the University discharged her because of her double billing complaints to NMH, at a minimum, she should allege some facts about her employment history with the University and the actual date and circumstances of her discharge. The First Amended Complaint is entirely silent on these points. Soulias also alleges in conclusory fashion that the University "punished and/or terminated those who spoke up about [double billing], including Plaintiff." If other employees complained about double billing and suffered adverse employment actions as a result, Soulias

should certainly consider pleading those facts as well. As it stands, her retaliatory discharge claim is deficient.

## Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss the First Amended Complaint without prejudice. R. 29. Soulias has leave to file a properly pled Second Amended Complaint on or before July 19, 2013. If Soulias fails to timely file a Second Amended Complaint, the Court will dismiss the case with prejudice.

ENTERED:

_____

Honorable Thomas M. Durkin
United States District Judge

Dated:  June 27, 2013